## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE: ENHANCED RECOVERY COMPANY,
LLC, TELEPHONE CONSUMER PROTECTION
ACT LITIGATION

**Case No. 6:13-md-02398-RBD-GJK**
**(MDL No. 2398)**

_____

## JOINT MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES, AND APPROVAL OF NOTICE TO THE CLASS AND INCORPORATED MEMORANDUM OF LAW

NOW COME Plaintiffs LATASHA BLAKE, WANETT DRINNING-DUFFEE, RONNIE DUFFEE, TERESA SOPPET, and LOIDY TANG (hereinafter referred to collectively as "Plaintiffs") and Defendant Enhanced Recovery Company (hereinafter, "Defendant") (collectively, Defendant and Plaintiffs shall be referred to as the "Parties"), by and through their respective undersigned counsel, and jointly move the Court for an order (i) preliminarily approving their proposed class action settlement pursuant to Fed.R.Civ.P. 23(b)(2) (a copy of the Settlement Agreement is attached hereto as Appendix 1); (ii) set dates for Class members to object to the settlement; (iii) scheduling a hearing for final approval of the Settlement Agreement; (iv) approving the method and form of notice to the Class (attached as Exhibit A to Appendix 1) and finding that the sending of such notice satisfies due process. A copy of the proposed preliminary approval order is attached as Exhibit B to Appendix 1. In support of this motion, plaintiffs state:

## MEMORANDUM OF LAW

## INTRODUCTION

Plaintiffs  claim that Defendant violated the Telephone Consumer Protection Act , 47 U.S.C. §227 ("TCPA"). Defendant is a limited liability company in Jacksonville, Florida that contacts consumers throughout the United States in order to collect upon delinquent debts owed to various companies. As detailed in the Plaintiffs' Consolidated Complaint, Plaintiffs allege that telephone calls were made to each of them, using an automatic telephone dialing system or an artificial or pre-recorded voice, without their prior express consent as prohibited by the TCPA. (Doc. 45).

After years of litigation, including extensive discovery in the *Blake* case (*Blake v. Enhanced Recovery Company, LLC*, 3:10-cv-01178-RBD-JBT, N.D. Fla.) and a successful appeal to the Seventh Circuit in the *Soppet* and *Tang* cases (*Soppet and Tang v. Enhanced Recovery Company, LLC et al.*, 10-cv-5469, N.D. Ill.), and after a two-day arms-length settlement conference mediated by the Honorable Herbert B. Hoffmann (Ret.) (as well as a preliminary hearing before this Court), Plaintiffs and Defendant have entered into a the Settlement Agreement attached as <u>Appendix 1</u>. The Parties believe the terms of the Settlement Agreement provide for a fair, reasonable, and adequate resolution of the claims of Plaintiffs and the Class.  This is particularly true, given the exceptional and highly unusual circumstances of this case, such as the size of the Class, Defendant's financial resources, limited insurance coverage, the difficulty in identifying the Class, and the overall benefit of the proposed settlement.

## THE PROPOSED SETTLEMENT

**I.      Class Relief**

Under the Settlement Agreement, Defendant has agreed to provide relief to the Class, the Plaintiffs, and Class Counsel respectively. As set forth in more detail below, the

Settlement Agreement provides injunctive relief to the Class, consisting of three components: changes to the way in which Defendant obtains and memorializes the receipt of consent from consumers to receive auto-dialed calls on their cell phones; changes in Defendant's policies and procedures for training  staff with respect to the requirements of the TCPA; and a two year reporting period in which Defendant is to certify compliance with the injunction on a quarterly basis. The specific requirements of the injunction are as follows:

1.   <u>Injunctive Relief Parameters.</u>

(a) Defendant shall strictly log and categorize consent.

(b) Defendant shall strictly and routinely search and scrub every number provided to it by the original creditor to determine if it is a cellular telephone number and keep a log of said numbers.

(c) If Defendant obtains any new telephone numbers for debtors from any source (relatives, public resources, skip tracing, etc.), then those numbers must be scrubbed utilizing reasonable procedures to determine which phone numbers are cellular telephone numbers.

(d) For each number identified as a cellular telephone number or for which Defendant does or may know to be a cellular telephone number, said number cannot be called utilizing Defendant's auto-dialer unless there is prior express consent.

(e) For each cellular telephone number wherein Defendant does not have concrete evidence of consent, Defendant must hand-dial the number until ERC is able to obtain prior express consent.

(f) Prior express consent must be clear and must be formally stated by the debtor in question.

(g) Prior express consent must be clearly and conspicuously noted in the computer system utilized by Defendant's debt collectors.

2.   <u>Injunction Oversight and Reporting.</u>  Defendant shall make a bi-annual report to Class Counsel outlining its compliance with the injunction and any issues that may have arisen. ERC agrees to submit copies of any putative individual or class action lawsuits filed against it during the reporting period to Class Counsel.

3.    <u>Injunction Training and Supervision.</u>  Defendant must incorporate into its employee handbooks sufficient training regarding the TCPA.  Defendant must devote classes and training for new and current debt collection employees as well as supervisory staff concerning: the TCPA, the meaning and how to obtain prior express consent as defined by the TCPA, the effect and statutory damages permitted under the TCPA, and prudent procedures for use and application of phone numbers obtained by debt collection employees during normal collection efforts. Defendant shall create a new TCPA compliance manager (who may be a current employee of Defendant) who shall review the training information, work to train staff, oversee debt collection practices and their TCPA compliance or lack thereof.

An additional benefit of the settlement to the Class, although not required in a Rule 23(b)(2) settlement, is notice of the settlement. Since direct notice is impracticable, notice will be sent by electronic mail to legal aid societies, states attorneys-general, and other organizations that represent consumers. As set forth more fully below, Class Counsel believes that this form of notice will be more effective than, say, a notice published in USA Today, a form of notice which is typical in many class action settlements when direct notice is impracticable.

Members of the Class do not release their individual claims against Defendant. Class members do release their right to bring a class TCPA claim against Defendant under Rule 23.

## II.    Plaintiffs' Recovery

The Settlement Agreement provides that each plaintiff is to receive $10,000 for his or her statutory damages and services as representatives of the Class (total of $50,000). This amount is reasonable in light of the number of calls received by each plaintiff that violated the TCPA. Plaintiff Tang received approximately 29 violative calls; Plaintiff Soppet, 25 such calls; Plaintiff Blake, 18 calls; and Plaintiffs Drinning-Duffee and Duffee 17 calls, respectively.

## III.    Payment to Class Counsel

The Settlement Agreement provides for the payment of $1.25 million to Class Counsel. This amount is reasonable in light of the fact that the litigation has been lengthy and extensively litigated and because Class Counsel's collective lodestar exceeds $1.25 million.

## ARGUMENT

**I.**      **Standards For Preliminary Approval of a Class Action Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. Class action settlement approval "is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

At preliminary approval, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Manual for Complex Litigation*, § 13.14, at 173 (Federal Judicial Center, 2004) ("MCL"). Preliminary approval of a proposed settlement is a matter within the broad discretion of the Court. *See In re Sunbeam Sec. Litig.*,176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (citing *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)).

The main question presented by a request for preliminary approval of a class action settlement is whether the proposed settlement is within the range of possible approval. *See In re Skinner Group*, 206 B.R. 252, 261 (N.D. Ga. 1997) (citing *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)); *Prudential*, 163 F.R.D. at 210. *See also Wrigley*, 2010 WL 2401149 at *2 (noting preliminary approval is typically "granted unless a proposed settlement is obviously deficient" and "where the proposed settlement is the result of the parties' good faith negotiations . . . and the settlement falls within the range of reason") (citations omitted). As one court has noted: "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D. N.Y 1997) (citing *Manual for Complex Litig.*, § 30.41 (3d ed. 1995)); *see also* MCL § 21.63 (4th ed. 2004).

The preliminary approval analysis does not require the Court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that determination is made only after notice of the settlement has been given to the members of the Class, Class members have been given an opportunity to voice their views of the settlement, and a final Settlement hearing has been conducted by the Court. *See, e.g.*, *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 163 F.R.D. at 210 (stating the court will be in a position to fully evaluate the fairness, reasonableness, and adequacy of a settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement").

II.    **The Proposed Settlement Agreement Should Be Given Preliminary Approval Because a Rule 23(b)(3) Settlement Was Not Practicable And The Class Benefits From the Injunctive Relief And The Notice Provided By This Settlement**

The proposed Settlement meets the standards outlined in the previous section for preliminary approval of a settlement. The proposed Settlement is well "within the range of possible approval." *In re Skinner Group*, 206 B.R. at 261 (citing *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)).

A.    **A Rule 23(b)(3) Settlement Was Not Practicable**

Although Class Counsel initially sought to settle the Class' claims pursuant to Rule 23(b)(3), they concluded after receipt of formal and informal discovery that a Rule 23(b)(3) settlement was not practicable. First, Defendant simply does not have the ability to fund a Rule 23(b)(3) settlement – either from its own resources or through insurance. The number of class members includes tens of millions of people. In *Blake*, plaintiff's counsel identified 3.5 million unique cellular telephone numbers that Defendant called during a six month period alone, with no

6

corresponding evidence of consent. The amount of Defendant's available insurance is disputed, and does not exceed more than $1 or $3 million. Defendant's finances are such that it cannot make a payment of even a few dollars per class member.

For the same reasons, Defendant does not have the financial resources to send either direct or publication notice to the Class. Either form of notice would cost far more than ERC has in insurance and assets.

Finally, it is not possible to determine from Defendant's records the identity of all the Class members. Defendant may have made 25 million unauthorized calls to cell phones since 2006 (the year the class period began). Because some of those cell phone numbers were "skip-traced", it is possible that many of those numbers did not belong to the actual debtor, but rather a friend or relative, making identification of the Class member impossible. Further, in *Blake*, plaintiff's counsel took the deposition of Defendant's Chief Information Officer, David M. Bernstein, who testified about Defendant's retention and deletion policies. Mr. Bernstein testified that, at that time, there were 50 million individual accounts archived by Defendant. The 50 million accounts, however, did not represent the whole of the Class because Defendant had deleted, either by agreement or as a regular business practice, many of the accounts of putative class members. Mr. Bernstein testified that it cost Defendant thousands of dollars per month to increase its file storage to preserve evidence for this case and, even with that increased storage space, Defendant could not afford to store account data relating to each potential Class member for the number of years it would take for this case to conclude. Mr. Bernstein further testified that contracts with original creditors mandated deletion of account information within a certain period of time. Due to those contractual mandates, Defendant did in fact delete a portion of its archived account data.

For all these reasons, a Rule 23(b)(3) settlement was impracticable.

**B.      The Proposed Settlement Provides Valuable Benefits to the Class**

The Settlement Agreement provides a number of valuable benefits to Class members. The

first benefit is an injunction against further violations of the TCPA.  During the two-year period in

which the injunction is in effect, Defendant will implement policies and procedures geared toward

ensuring that consent is obtained from consumers before any numbers are placed in Defendant's

Dialer . These policies and procedures include increased training, manipulation of the software and

hardware utilized by ERC, and detailed reporting to Class Counsel. The injunctive relief obtained

for the Class comports with the purpose of the TCPA: to protect consumers from unwanted and

harassing calls. *See Gager v. Dell Financial Services, Inc.,* 2013 WL 4463305 (3d Cir. 2013).

The second benefit to the Class is the notice. Although notice is generally not required as

part of a Rule 23(b)(2) Class Settlement, Class Counsel believes that notice is required in this case

where Class members will be releasing their right to bring claims under Rule 23. The notice, in

conjunction with Class members' retention of their right to bring individual claims against

Defendant, is a significant benefit to the Class. Under the proposed Settlement, each Class member

retains his or her right to bring an individual action to recover $500 - $1,500 in statutory damages

for violating the TCPA.  Moreover, with the filing of the *Soppet* case in 2010, the four year statute

of limitations has been tolled. So Class members can potentially bring individual claims against

ERC dating as far back as 2006. The provision of notice in the Settlement Agreement affords class

members a greater opportunity for Class Members to become aware of and assert potential claims

against Defendant.

The notice contemplated by the Settlement Agreement, moreover, is superior to the

traditional publication notice in a national newspaper such as USA Today. Many Class members,

persons with limited financial resources, are unlikely to read national newspapers such as USA

Today. Class Counsel has attempted to devise a notice which is more likely to reach a greater number of persons likely to be a Class member. As contemplated, the notice would be sent by electronic mail to legal aid and social service organizations whose clients may be of limited means. The proposed notice is short and easily duplicated and disseminated.

**III.     The Class Should Be Certified For Settlement Purposes**

The Class should be provisionally certified for settlement purposes. Under Rule 23, each of the four requirements of Rule 23(a) must be satisfied and one of the three elements of Rule 23(b) must be satisfied to certify a class. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1265 (11th Cir. 2009); *Klay v. Humana, Inc.,* 382 F. 3d 1241, 1250 (11th Cir. 2004). *See also Bush .v Calloway Consol. Grp. River City Inc.,* 2012 WL 1016871 (M.D.Fla Mar. 26, 2012) (Dalton, Jr. J.).

For purposes of settlement of this action (without adjudication on the merits or a determination of whether a class should be certified), the Court should certify this lawsuit as a class action on behalf of the following Class:

> **All persons within the United States who on or after August 30, 2006 received any telephone call from Defendant Enhanced Recovery Company or its agents to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, which said call was not made for emergency purposes and where Defendant's records do not show that the person provided the telephone number to Defendant or the original creditor.**

Class actions for TCPA violations are often appropriate. Telephone call and text message cases include: *Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036 (9th Cir.  2012); *Manno v. Healthcare Revenue Recovery Group, LLC,* 289 F.R.D. 674 (S.D.Fla. 2013); *Mitchem v Illinois Collection Serv.,*  271 F.R.D. 617 (N.D. Ill. 2011); *Balbarin v. North Star Capital Acquisition, LLC,*, 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill., Jan. 5, 2011), later opinion, 2011 U.S. Dist. LEXIS 5763 (N.D. Ill., Jan. 21, 2011), later opinion, 2011 U.S. Dist. LEXIS 58761 (N.D. Ill., June

1, 2011); *Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS (MDD), 2012 U.S. Dist. LEXIS 73983 (S.D.Cal., May 29, 2012). Fax cases include: *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 11-3188 and 11-3746, 2013 WL 4506176 (7th Cir., August 26, 2013); *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D. Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D. Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D. Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 4:12cv221 (E.D.Mo., Feb. 25, 2013)

The Parties bring this request for conditional certification and approval under Rule 23(b)(2). As shown below, the Parties' proposed Settlement satisfies all requirements found in Rule 23(a) and 23(b)(2).

### A.     The Requirements of Rule 23(a) Are Met

#### 1.   Numerosity

Although Rule 23(a)(1) is ordinarily defined as "numerosity", this requirement might more appropriately be termed "impracticality." See, e.g., *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D.Fla.1986); 1 William Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:3 (4th ed. and Supp. 2010). Thus, the question hinges not on the specific number of purported class members, but rather on whether joinder is impracticable in this instance. *Id.* The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D.Fla.2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)).  In *Blake*, plaintiff's counsel identified 3.5 million unique cellular telephone numbers that Defendant called during a six month period alone, with undetermined evidence of consent This group represents only a six-month sampling out of the seven year Class Period. Extrapolating this data, Plaintiffs believe the Class could number in the tens of millions. Numerosity is clearly satisfied.

#### 2.   Commonality

Rule 23(a)(2)'s commonality prerequisite requires at least one issue of law <u>or</u> fact be common to all members of the class. It "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs" (*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D.Fla.1996)) but can be satisfied if "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D.Fla.2004); *Agan v. Katzman & Korr*, P.A., 222 F.R.D. 692, 697 (S.D.Fla.2004); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D.Fla.1991); *Kornburg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (finding a sufficient nexus where the "claims or defenses of

the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory.")

Under the legal analysis above, commonality exists among the Class Members.   The Settlement Class has been defined to include claims that arose under the TCPA. Specifically, the claims involve calls made to cellular telephones using an "auto-dialer" and/or "pre-recorded voice" to make each call. Plaintiffs aver that the cell phone numbers called were never provided to ERC or the original creditor. In other words, no prior express consent was given.  Moreover, the practices and course of conduct alleged by the Plaintiffs shows that ERC engaged in "standardized conduct", regarding which numerous federal courts have recognized the appropriateness of certifying class actions involving this type of conduct. See e.g., *Holtzman v. Turza*, 2009 WL 3334909 (N.D.Ill. October 16, 2009); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 WL 2581324 (N.D.Ill. August 20, 2009); *Am. Home Servs. Inc. v. A Fast Sign Co., Inc.*, 287 Ga.App. 161, 651 S.E.2d 119, 2007 WL 2265578 (2007); *Transp. Inst. v. Seattle PC-Magic, Inc.,* 2005 WL 5267529 (Wash.Super. June 8, 2005); *Whiting Corp. v. Sungard Corbel, Inc.*, 2005 WL 5569575 (Ill.Cir. Nov.9, 2005).

### 3.      Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. Ebsco Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000) (class representative must possess the same interest and suffer the same injury as the class members, *Id.* at 1279.) "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D.Fla.1996).

Here, a sufficient nexus exists between the named Plaintiffs and the Settlement Class Members.

Plaintiffs seek relief and damages under the same federal statute, the TCPA. Plaintiffs' claims are identical in that the core claim is that they received unwanted calls from ERC on their cellular telephone and never provided the number to ERC or the Creditor that claimed a debt was owed.

### 4.      Adequacy

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987).

No evidence has been presented, nor can it be, that any of the Plaintiffs maintain interests antagonistic to those of the Class.  The relief that the Class Representatives seek are the same as those for the Class. Furthermore, the injunctive relief provided by the Settlement Agreement will operate to serve both the Class Members and their Representatives by protecting them from future calls which violate the TCPA.

Rule 23(a)(4) also mandates that Class Counsel be deemed adequate.  Plaintiffs' attorneys in this matter have litigated this case for over three years.  Class Counsel has conducted extensive discovery into the claims asserted and have gone so far as to analyze voluminous data which was maintained by the Defendant in order to ascertain the size of the class and the records maintained. Class Counsel has fought against, and won, an interlocutory appeal from Defendant's Motion for Summary Judgment before the Seventh Circuit. Furthermore, Class Counsel collectively has significant experience handling complex litigation such as this, including other class claims arising under the very same federal statute.  Therefore, the Settlement Class is adequately represented by Class Counsel.

### B.      The Requirements of Rule 23(b)(2) Are Met

Rule 23(b)(2) provides for certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *FRCP 23(b)(2).*

This Circuit has identified the difference in character between a (b)(2) class and a (b)(3) class by noting that they are distinguished by "cohesiveness". *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 fn. 8 and 1156 (11th Cir.1983). Members of a (b)(2) class are generally bound together by 'pre-existing or continuing legal relationships' that transcend the specific set of facts giving rise to the litigation. *Id.*

Plaintiffs seek this Court's approval of an injunction which effectively prevents Defendant from calling the cellular telephones of debtors in violation of the TCPA. Defendant has acted "on grounds generally applicable to the class" by engaging in a pattern of calling the cellular telephones of debtors allegedly in violation of the TCPA, without having obtained consent from the called parties or from an original creditor who obtained those numbers from the called parties. Plaintiffs allege, and corresponding discovery has confirmed, that ERC obtained cellular telephone numbers from outside vendors that utilized "skip-tracing" efforts. Discovery has also confirmed that Defendant failed to maintain a log of consent or how those numbers were acquired by ERC.

The practice of obtaining numbers from outside sources, failing to log or record where phone numbers came was captured, and loading those numbers into their dialer system for the placement of collection calls was Defendant's practice. This course of conduct was applied uniformly to all purported Class Members and the injunctive relief in the Settlement Agreement will redress the group-wide injury and properly serve the remedial nature of the TCPA. *See,*

*Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147, 162 (2nd Cir. 2001).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to approve the settlement and enter the order in the form of <u>Exhibit B</u> to <u>Appendix 1</u>: (i) granting preliminary approval to the Settlement Agreement; (ii) setting dates for Class members to object to the settlement; (iii) scheduling a hearing for final approval of the Settlement Agreement; (iv) approving the method and form of notice to the Class and finds that the sending of such notice satisfies due process.

Respectfully submitted,

s/James O. Latturner
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
        & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
Lead Counsel for Plaintiffs

s/David P. Schafer
David P. Schafer
Law Office of David Schafer, PLLC
7800 N-10 Vest, Suite 830
San Antonio, TX 78230
Lead Counsel for Plaintiffs

s/James K. Schultz
James K. Schultz
Sessions. Fishman. Nathan & Israel, LLC
55 West Monroe Street, Suite 1120
Chicago, Illinois 60603
(312) 578-0990
(312) 578-0991 (fax)
jschultz@sessions-law.biz
Lead and Liaison Attorney for Enhanced
Recovery Company, LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of October, 2013, I electronically filed the foregoing Status Report with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>s/James O. Latturner</u>
James O. Latturner

# APPENDIX 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE ENHANCED RECOVERY
COMPANY, LLC, TELEPHONE
CONSUMER PROTECTION ACT
LITIGATION

This document applies to all actions.                    Case No. 6:13-MD-2398-Orl-37GJK

## CLASS ACTION SETTLEMENT AGREEMENT

**IT IS HEREBY STIPULATED AND AGREED** by and among Latasha Blake, Teresa Soppet, Loidy Tang, Wannett Drinning-Duffee, and Ronnie Duffee, individually and on behalf of all others similarly situated ("Plaintiffs" or "Class Representatives"), with the assistance and approval of Class Counsel, on the one hand, and Enhanced Recovery Company ("ERC" or "Defendant") (collectively, the "Settling parties") with the assistance of its counsel of record, on the other hand, as set forth below:

## RECITALS

**WHEREAS**, Plaintiffs brought class actions against Defendant, which actions were transferred and consolidated for pre-trial purposes into the Lawsuit, which is currently pending and unresolved between the Parties;

**WHEREAS**, in the Lawsuit, Plaintiffs claim that ERC violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* by, without their consent, making calls to their cell phones using an Automatic Telephone Dialing System or leaving messages with an artificial or prerecorded voice.

**WHEREAS**, in the Lawsuit, Plaintiffs seek an injunction restraining the practices complained of, statutory damages, treble damages, costs of suit, and such other or further relief as the Court were to deem proper;

**WHEREAS**, Defendant denies Plaintiffs' claims, denies any liability to Plaintiffs or the proposed Settlement Class, and denies any wrongdoing of any kind;

**WHEREAS**, Plaintiffs and Defendant agree that it is desirable that the Lawsuit and the claims alleged therein be settled upon the terms and conditions set forth herein to avoid further expense and uncertain, burdensome and potentially protracted litigation, and to resolve all claims that have been or could have been asserted by Plaintiffs and the Class Members;

**WHEREAS**, the Settling Parties have engaged in extensive arms-length settlement negotiations and Class Counsel represent that they have otherwise conducted a thorough study and investigation of the law and the facts relating to the claims that have been or might have

1

been asserted in the Lawsuit and have concluded that, taking into account the benefits that Plaintiffs and the Class Members will receive as a result of this Settlement Agreement and the risks and delays of further litigation, this Settlement Agreement is fair, reasonable and adequate and in the best interests of Plaintiffs and the Class Members;

**WHEREAS**, in consideration of the foregoing and other good and valuable consideration, it is hereby stipulated and agreed by and between Plaintiffs and Defendant that the claims of Plaintiffs and the Class Members be and are hereby compromised and settled, subject to the approval of the Court, upon the terms and conditions set forth below.

## DEFINITIONS

As used in all parts of this Settlement Agreement, the following terms have the meanings specified below:

1.1     "Class Counsel" means James O. Latturner and the Law Offices of Edelman, Combs, Latturner and Goodwin, LLC, and David Schafer and the Law Offices of David Schafer.

1.2     "Class Member" means a person who is a member of the Settlement Class.

1.3     "Class Notice" means the notice to be approved by the Court as set forth in paragraph 2.8 below and Exhibit A attached hereto.

1.4     "Class Period" means August 30, 2006 through the date of the entry of the Final Approval Order.

1.5     "Court" means the United States District Court for the Middle District of Florida.

1.6     "Effective Date" means the date on which the Final Approval Order becomes Final.

1.7     "Fairness Hearing" means a hearing set by the Court for the purpose of: (i) determining the fairness, adequacy and reasonableness of the Settlement Agreement pursuant to class action procedures and requirements; and (ii) entering a Final Approval Order.

1.8     "Final" means the later of: (i) the date a Final Approval Order is entered by the Court if no objection(s) is (are) filed; or (ii) the date of expiration for the time for noticing a valid appeal from the Final Approval Order if an objection(s) is (are) filed and an appeal is not noticed; or (iii) the date of final affirmance or dismissal of the last pending appeal if an appeal is noticed.

1.9     "Final Approval Order" means an order to be entered by the Court entitled "Final Approval Order," substantially in the form attached hereto as Exhibit C.

1.10  "<u>Defendant</u>" means defendant Enhanced Recovery Corporation, Enhanced Recovery Company, LLC, and each of their past, present, and future directors, officers, employees, partners, principals, agents, underwriters, insurers, co-insurers, re-insurers, shareholders, attorneys, and any related or affiliated company, including any parent, subsidiary, predecessor, or successor company, and all assigns, licensees, divisions, clients and joint ventures (in their capacities as such).

1.11  "<u>Lawsuit</u>" means the lawsuit styled *In re Enhanced Recovery Company, LLC, Telephone Consumer Protection Act Litigation*, currently pending in the Court as Case No. 6:13-md-2398-ORL-37GJK (MDL No. 2398), and all underlying lawsuits that were consolidated and transferred by order of the Judicial Panel on Multidistrict Litigation into Case No 6:13-m-2398-ORl-37GJK.

1.12  "<u>Objection Deadline</u>" means the deadline set by the Court for Class Members to object to the Settlement Agreement.

1.13  "<u>Settlement Agreement</u>" means this settlement agreement and all of its attachments and exhibits, which the Settling Parties understand and agree set forth all material terms and conditions of the settlement between them and which is subject to Court approval.

1.14  "<u>Settlement Class</u>" means the class the Parties have consented to for purposes of settlement only, as described in paragraph 2.1 below.

1.15  "<u>Settling Parties</u>" or "<u>Parties</u>" means Plaintiffs and Defendant and their respective representatives and attorneys.

## <u>TERMS AND CONDITIONS</u>

2.1  **The Settlement Class**. The Settling Parties stipulate to certification of the following class for settlement purposes only pursuant to Fed.R.Civ.P. 23(b)(2):

> (a) all persons within the United States (b) who, on or after August 30, 2006 (c) received any telephone call from ERC or its agents to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, (d) which call was not made for emergency purposes, (e) where defendant's records do not show that the person provided the number to defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by Defendant's equipment from an inbound call).

2.1.1. The Parties agree that the Class Members are unidentifiable because Defendant no longer has the names and addresses, or confirmation of consent, of the putative Class Members. The Parties also agree that Defendant has insufficient resources to grant effective relief to the putative Class Members. Due to the twofold impossibility in (a) identifying the Class Members and (b) Defendant's funding a settlement which would fairly compensate Class Members, the Class Members can neither receive individual written notice of the settlement nor payment. For this

reason, the Parties have agreed that the Class Members shall receive the benefit of the proposed stipulated injunction, in exchange for a limited release and settlement.

Because of the foregoing issues, the Parties will request certification of a settlement class under only Fed. R. Civ. P. 23(b)(2) because the Parties agree that a Fed. R. Civ. P. 23(b)(3) litigation or settlement class would be improper and/or impossible.  The Parties will request that the Court enjoin all Class Members from attempting to certify a class action for money damages against Defendant pursuant to the TCPA under Fed. R. Civ. P. 23(b)(3), or any similar federal or state procedural rule or law.  The injunction request will be included in the proposed Order of Preliminary Approval of Class Action Settlement and Final Order and Judgment.

2.2    **Injunctive Relief to the Class**.  The Settlement Class shall receive the following injunctive relief:

A.    Injunctive Relief Parameters. The Parties agree that for a period of the two years following the effective date, ERC shall comply with the following:

1.  ERC shall strictly log and categorize consent.

2.  ERC shall strictly and routinely search and scrub every number provided to it by the original creditor to determine if it is a cellular telephone number and keep a log of said numbers.

3.  If ERC obtains any new telephone numbers for debtors from any source (relatives, public resources, skip tracing, etc.), then those numbers must be scrubbed utilizing reasonable procedures to determine which phone numbers are cellular telephone numbers.

4.  For each number identified as a cellular telephone number or for which ERC does or may know to be a cellular telephone number, said number cannot be called utilizing ERC's auto-dialer unless there is prior express consent as contemplated by the TCPA.

5.  For each cellular telephone number wherein ERC does not have concrete evidence of consent, ERC must hand-dial the number until ERC is able to obtain prior express consent.

6.  Prior express consent must be clear and must be formally stated by the debtor in question.

7.    Prior express consent must be clearly and conspicuously noted in the computer system utilized by ERC debt collectors.

B.    Injunction Oversight and Reporting.  ERC shall make a bi-annual report to Class Counsel outlining its compliance with the TCPA injunction and any issues that may have arisen. ERC agrees to submit copies of any putative individual or class action lawsuits filed against it

and asserting a claim pursuant to the TCPA during the reporting period to Class Counsel beginning 6 months from the date that this agreement is signed and every 6 months thereafter until expiration of the injunction.  Reports from ERC will be due on April 30 , 2014, October  31 , 2014, April  30 , 2015 and October 31 , 2015.

       C.    <u>Injunction Training and Supervision.</u>  ERC must incorporate into its employee handbooks sufficient training regarding the TCPA. ERC must devote classes and training for new and current debt collection employees as well as supervisory staff concerning: the TCPA, the meaning and how to obtain prior express consent as defined by the TCPA, the effect and statutory damages permitted under the TCPA, and prudent procedures for use and application of phone numbers obtained by debt collection employees during normal collection efforts. ERC shall create a new TCPA compliance manager (who may be a current employee of ERC and the new compliance manager position need not be dedicated exclusively to that position) who shall review the training information, work to train staff, oversee debt collection practices and their TCPA compliance or lack thereof.

       2.3    **Payment To Class Representatives**. Each Class Representative shall receive $10,000 for his or her individual claim and as an incentive award for his or her services as Class Representative. ERC agrees not to object to the Court awarding this amount to each Class Representative.

       2.4    **Payment to Class Counsel**. Class Counsel shall receive $1,250,000 [less notice costs, as specified in 2.5] in full satisfaction of all reasonable attorneys' fees and costs with respect to obtaining relief for the Settlement Class. This payment is subject to Court approval and ERC agrees not to object to the Court awarding this amount to Class Counsel.

       2.5    **Payment of Notice Costs**.   Class Counsel shall be responsible for the cost of sending notice to the Class Members as set forth in paragraph 2.8 below from the payment to Class Counsel described in Paragraph 2.4.

       2.6    **Release by Class Representatives**. Except for the obligations created by this Settlement Agreement, upon the Effective Date, Class Representatives remise, release and forever discharge the Defendant from any and all claims, charges, complaints, demands, judgments, causes of action, rights of contribution and indemnification, attorneys' fees, costs and liabilities raised in the Lawsuit.  Specifically, the "<u>Released Claims</u>" shall include any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, or foreign law right of action or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), and also including all "Unknown Claims" (as defined below) which Plaintiff or a Class Member has arising out of, based upon, or in any way relating to Defendant allegedly calling, without prior express consent, his or her paging service, cellular telephone service, mobile radio service, radio common carrier service, or other service for which he or she was charged for the call, through the use of any automatic telephone dialing system (including an automated dialing machine, dialer, and auto-dialer) or artificial or prerecorded voice, including, but not limited to, any claims under the TCPA, or any similar state

or federal law.

Specifically excluded from this section's release language are any claims Plaintiffs Soppet and Tang have against Illinois Bell Telephone Company d/b/a AT&T Illinois, and its parent and subsidiary companies.

2.7 **Release by Class Members**. Class members do not release any of their individual claims under the TCPA pursuant to this Settlement Agreement, but, as of the Effective Date, each Class Member releases any right to file, prosecute or participate in a class action lawsuit against Defendant, if that class action lawsuit alleges claims arising under the TCPA for violations arising during the Class Period. Defendant specifically reserves all of its rights and defenses to any putative individual claims of Class Members.

This Agreement is not intended to create any new rights, or expand any existing rights, that any Class Member may have against Defendant under any state or federal law. For example, this Agreement does not toll or restart the statute of limitations for any claim that any Class Member may have against Defendant under any state or federal law.

2.8 **Class Notice**. If, by entering the Preliminary Approval Order, the Court provides authorization to provide the Class Notice to Class Members, the Settling Parties will cause Class Notice to be given via electronic mail within twenty-eight (28) days after the Preliminary Approval Date in the form and substance set forth in Exhibit A to legal aid societies and States' Attorneys' General for dissemination to their clientele.

2.9 **Right to Object**. Any Class Member, except Plaintiffs, may object to the terms of this Settlement Agreement in writing, as detailed in the Class Notice and within the time and in the manner provided by Court order. Any Class member who exercises his or her right to object to this Settlement Agreement will be responsible for his or her own attorneys' fees and costs. Class Counsel and attorneys of record for Defendant must be served with copies of any objections, postmarked no later than the Objection Deadline. The Class Notices shall advise Class members of this option. Any objections must be in writing and timely submitted or else they are waived.

2.10 **Participation**. Any Class Member may seek to participate in the Lawsuit. Any Class member who exercises his or her right to participate in the Lawsuit will be responsible for his or her own attorneys' fees and costs.

2.11 **Preliminary Approval Order**. As soon as practicable after execution of this Settlement Agreement, Plaintiffs and Defendant shall jointly request an order from the Court that:

    A. preliminarily approves this Settlement Agreement;

    B. conditionally certifies for purposes of settlement the Settlement Class;

C. schedules a hearing for final approval of this Settlement Agreement; and

D. approves the form and manner of Class Notice as set forth in paragraph 2.8 herein and finds that such notice satisfies the requirements of due process pursuant to the Code of Civil Procedure, the United States Constitution and any other applicable law and finds that no further notice to the Settlement Class is required.

The Settling Parties agree to request the form of Preliminary Approval Order attached hereto as Exhibit B. The fact that the Court may require changes in the Preliminary Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.12   **Final Approval Order**. At the conclusion of, or as soon as practicable after, the close of the Fairness Hearing, Plaintiffs and Defendant shall jointly request that the Court enter a Final Approval Order:

A. approving the terms of this Settlement Agreement as fair, reasonable and adequate;

B. providing for the implementation of its terms and provisions;

C. certifying for purposes of settlement the Settlement Class;

D. finding that the Class Notice given to the Settlement Class satisfies the requirements of due process pursuant to the Code of Civil Procedure, the United States Constitution and any other applicable law;

E. expressly retaining exclusive jurisdiction to enforce the terms and provisions of this Settlement Agreement;

The Settling Parties agree to request jointly the form of Final Approval Order, attached hereto as Exhibit C. The fact that the Court may require changes in the Final Approval Order will not invalidate this Settlement Agreement if the changes do not materially modify this Settlement Agreement.

2.13   **Release of Attorney's Lien**. In consideration of this Settlement Agreement, Class Counsel hereby waives, discharges, and forever releases Defendant from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Class Counsel in connection with the Lawsuit; provided, however, that this release is conditioned upon Final Approval of this Settlement Agreement by the Court and full performance by the Defendant of its obligations under this Settlement Agreement.

2.14   **No Admission of Liability**. Whether or not this Settlement Agreement is

consummated, this Settlement Agreement and all proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession by Defendant of any liability or wrongdoing whatsoever.

2.15    **Best Efforts**.  The Settling Parties and their respective counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the consummation of this Settlement Agreement.

2.16    **Counterparts**. This Settlement Agreement may be signed in counterparts, in which case the various counterparts shall constitute one instrument for all purposes.  The signature pages may be collected and annexed to one or more documents to form a complete counterpart.  Photocopies, facsimiles or scanned copies of the signature pages of this Settlement Agreement may be treated as originals.

2.17    **Binding Agreement**.  Each and every term of this Settlement Agreement shall be binding upon and inure to the benefit of Plaintiffs and each Class Member and each of their respective current and former heirs, executors, administrators, assigns, agents and attorneys, all of whom/which persons and entities are intended to be beneficiaries of this Settlement Agreement.  Each and every term of this Settlement Agreement shall be binding upon and inure to the benefit of Defendant and each of its current and former officers, directors, managers, shareholders, employees, predecessors, successors, assigns, agents and attorneys. There are otherwise no third-party beneficiaries of this Settlement Agreement.

2.18    **Governing Law**. This Settlement Agreement (and any exhibits hereto) shall be considered to have been negotiated, executed and delivered, and to have been wholly performed, in the State of Florida, and the rights and obligations of the Settling Parties to this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal substantive laws of the State of Florida without giving effect to Florida choice of law principles.

2.19    **Retention of Jurisdiction**. This Settlement Agreement is contingent upon the Court retaining jurisdiction to enforce its terms in the Final Approval Order and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

2.20    **Interpretation**. The Settling Parties acknowledge that they have had an equal opportunity to participate in the drafting of this Settlement Agreement and that the Settling Parties and their respective counsel reviewed and negotiated the terms and provisions of this Settlement Agreement and have contributed to its revisions.  Therefore, in any dispute over the construction or interpretation of this Settlement Agreement, the Settling Parties agree and understand that the Settlement Agreement shall be construed fairly as to all Settling Parties and shall not be construed against any Settling Party on the basis of authorship.  The Settling Parties further agree that in this Settlement Agreement the singular shall include the plural and vice versa where the content so requires.

2.21    **Entire Agreement**. This Settlement Agreement constitutes the entire agreement of the Settling Parties hereto as to the matters raised herein.  The undersigned acknowledge that there are no communications or oral understandings contrary to, in addition to, or different from the terms of this Settlement Agreement and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon execution of this Settlement Agreement, superseded and merged into this Settlement Agreement and shall have no effect.  This Settlement Agreement may not be amended or modified in any respect whatsoever, except by a writing duly executed by the Settling Parties and their respective counsel.

2.22    **Authority**. The persons signing this Settlement Agreement hereby represent and warrant that they have read this Settlement Agreement, that they know and understand its terms, that they have consulted with counsel with respect hereto, that they have signed this Settlement Agreement freely, and that they intend that they and/or or any person or entity on whose behalf they are signing this Settlement Agreement will be fully bound by all the terms and provisions of this Settlement Agreement.  Such persons further represent and warrant that they are competent to sign this Settlement Agreement and that, as necessary, all corporate or other legal formalities have been followed such that they have full authority to execute this Settlement Agreement on behalf of the person or entity for whom or for which they are signing this Settlement Agreement in a representative capacity.

2.23    **Headings**. The headings of the several sections and paragraphs hereof are for convenience only and do not define or limit the contents of such sections or paragraphs.

2.24    **Severability**. In case any one or more of the provisions contained in this Settlement Agreement shall be determined to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected and/or impaired thereby.

2.25    **Attorney's Fees**.  In the event that any action between these Parties is necessary to enforce the terms and conditions of this Release, the prevailing party shall be entitled to the recovery of reasonable attorney's fees and costs from the losing party.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

**IN WITNESS WHEREOF**, the Settling Parties hereto, have so agreed on the dates noted below.

Plaintiffs and Class Representatives

9

By: _Latasha Blake_       _10/30/2013_

Latasha Blake                  Date

By: _____      __/__/_____

Teresa Soppet                   Date

By: _____      __/__/_____

Loidy Tang                     Date

By: _____      __/__/_____

Wannett Drinning-Duffee        Date

By: _____      __/__/_____

Ronnie Duffee                   Date

_____      __/__/_____

Daniel A. Edelman                Date
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER AND GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603

*Counsel for Plaintiffs and the Class Members*

10

By: _____        ___/___/_____
    Latasha Blake                       Date

By: _____        10/31/2013
    Teresa Soppet                       Date

By: _____        ___/___/_____
    Loidy Tang                          Date

By: _____        ___/___/_____
    Wannett Drinning-Duffee             Date

By: _____        ___/___/_____
    Ronnie Duffee                       Date


    _____        ___/___/_____
    Daniel A. Edelman                   Date
    Cathleen M. Combs
    James O. Latturner
    Francis R. Greene
    EDELMAN, COMBS, LATTURNER AND GOODWIN, LLC
    120 S. LaSalle Street, 18th Floor
    Chicago, Illinois 60603

    *Counsel for Plaintiffs and the Class Members*

                        10

By: _____          ___/___/_____

    Latasha Blake                         Date


By: _____          ___/___/_____

    Teresa Soppet                         Date


By: _____          10 /30/ 2013

    Loidy Tang                            Date


By: _____          ___/___/_____

    Wannett Drinning-Duffee               Date


By: _____          ___/___/_____

    Ronnie Duffee                         Date



_____               ___/___/_____

    Daniel A. Edelman                     Date
    Cathleen M. Combs
    James O. Latturner
    Francis R. Greene
    EDELMAN, COMBS, LATTURNER AND GOODWIN, LLC
    120 S. LaSalle Street, 18th Floor
    Chicago, Illinois  60603

*Counsel for Plaintiffs and the Class Members*

10

By: _____        ___/___/_____
     Latasha Blake                                   Date


By: _____        ___/___/_____
     Teresa Soppet                                   Date


By: _____        ___/___/_____
     Loidy Tang                                      Date


By: _____        ___/___/_____
     Wannett Drinning-Duffee                         Date


By: _____        ___/___/_____
     Ronnie Duffee                                   Date


_____        10/31/13
Daniel A. Edelman                         Date
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER AND GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603

*Counsel for Plaintiffs and the Class Members*

**ENHANCED RECOVERY COMPANY**

Defendant

By: _MARK A. THOMPSON_                   _10/30/2013_

_MARK A. THOMPSON_                       Date

Its: _CO · CEO_

Approved as to form:

_____                    _10 nvi 13_

James K. Schultz                         Date
Sessions, Fishman, Nathan & Israel, LLC
55 West Monroe Street, Suite 1120
Chicago, Illinois 60603
*Counsel for Defendant Enhanced Recovery Company*

11

**EXHIBIT A**

UNITED DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

*A Federal court authorized this notice. This is not a solicitation from a lawyer.*

# IF YOU OR SOMEONE YOU KNOW RECEIVED A
# COLLECTION CALL ON A CELL PHONE FROM

# ENHANCED RECOVERY COMPANY, LLC

## PLEASE READ THIS NOTICE

- This is to inform you of the settlement of a class action lawsuit against Enhanced Recovery Company, LLC ("ERC") in the United District Court for the Middle District of Florida, Case No. 6:13-md-02398-RBD-GJK.

- In the lawsuit, the plaintiffs claimed that, without their consent, ERC made collection calls to their cell phones using an automated telephone dialing system or an artificial or prerecorded voice. Plaintiffs claimed that these acts violated a Federal law - the Telephone Consumer Protection Act.

- Plaintiffs brought the case on behalf of themselves and everyone else who received unauthorized cell phone calls from ERC. You may be a member of the class and entitled to the benefits of the settlement.

- If the settlement is approved by the Court:

  o ERC will change its practices to ensure that in the future it does not call anyone's cell phone without his or her consent.

  o If you are a class member, you retain your right to bring an individual (non-class) lawsuit against ERC for between $500-$1,500 per illegal call you received. The deadline for bringing such a lawsuit has been delayed while this class action lawsuit has been pending. Under the settlement, class members are giving up their right to bring class claims against ERC.

  o Because class members are retaining their right to bring their own lawsuits, they are not receiving any payment from this lawsuit.

- The Court is holding a hearing to consider the fairness of the settlement on January __, 2014 at ___a.m./p.m. If you would like to object to any part of the settlement, including the fees awarded the attorneys, you can obtain more information about the settlement and how to file an objection at www. . . . or by calling xxx-xxx-xxxx.  You may also contact Class Counsel, below, to find out more information.

Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle St., Suite 1800
Chicago, IL 60603
Tel. (312) 917-4543
Fax. (312) 419-0379
info@edcombs.com.

The Law Offices of David P. Schafer
7800 IH-10 West, Suite 830
San Antonio, TX 78230
Tel. (210) 348-0500
Fax. (210) 348-0520
Info@helpingtexas.com

**EXHIBIT B**

Exhibit B

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE ENHANCED RECOVERY
COMPANY, LLC, TELEPHONE
CONSUMER PROTECTION ACT
LITIGATION

This document applies to all actions.              Case No. 6:13-MD-2398-Orl-37GJK

### [PROPOSED] PRELIMINARY APPROVAL ORDER

This matter coming before the Court on the joint request of the parties for preliminary approval of a Class Action Settlement Agreement, and based upon the papers submitted to the Court and all of the proceedings had in this matter to date, IT IS HEREBY ORDERED:

1.     Solely for purposes of settlement, the following Settlement Class is provisionally certified pursuant to Fed. R. Civ. P. 23(b)(2):

> All persons within the United States (b) who, on or after August 30, 2006 (c) received any telephone call from ERC or its agents to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, (d) which call was not made for emergency purposes, (e) where defendant's records do not show that the person provided the number to defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by ERC's equipment from an inbound call).

2.     Based on the parties' stipulations, and for settlement purposes only:

(A)     The class as defined is sufficiently numerous such that joinder is impracticable;

(B)     Common questions of law and fact predominate over any questions affecting only individual Class Members, and include whether or not Defendant Enhanced Recovery Company violated the Fair Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* by, without consent, making calls to

     the cell phones of plaintiffs and class members using an Automatic Telephone Dialing System or leaving messages with an artificial or prerecorded voice.;

(C)    The claims of Plaintiffs Latasha Blake, Teresa Soppet, Loidy Tang, Wannett Drinning-Duffee, and Ronnie Duffee are typical of the Class Members' claims;

(D)    Plaintiffs Latasha Blake, Teresa Soppet, Loidy Tang, Wannett Drinning-Duffee, and Ronnie Duffee are appropriate and adequate representatives for the Class and their attorneys, James O. Latturner and the Law Offices of Edelman, Combs, Latturner and Goodwin, LLC, and David Schafer and the Law Offices of David Schafer, are hereby appointed as Class Counsel; and

(E)    Enhanced Recovery Company has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

3.    The Court finds that the proposed settlement is within the range of fairness and reasonableness and grants preliminary approval to it. In the event that the proposed settlement is not finally approved for any reason, Defendant shall, pursuant to the Settlement Agreement, retain its right to contest certification of the Class.

4.    The Court approves the proposed form of notice to the Class, and directs that notice be implemented in accordance with the Settlement Agreement. Class Counsel shall file an affidavit with the Court, at least 5 business days prior to the Final Approval Hearing, attesting that notice has been so given.

5.      The Court finds that the notice proposed in paragraph 2.8 of the Settlement Agreement is the only notice to the Class Members that is required and further finds that such notice satisfies the requirements of due process and Fed. R. Civ. P. 23.

6.      Class Members shall have ninety (90) days from the date of this Order to object to the proposed Settlement Agreement.

7.      Any Class Member who objects to the settlement contemplated by the Settlement Agreement shall have a right to appear and be heard at the Final Approval Hearing provided that such Class Member files with the Court and delivers to Class Counsel and Defendant's counsel a written notice of objection together with a statement of reasons for the objection, postmarked no later than ninety (90) days from the date of this Order. Class Counsel and Defendant's counsel may, but need not, respond to the objections, if any, by means of a memorandum of law no later than five (5) days prior to the Final Approval Hearing.

8.      A Final Approval Hearing on the fairness and reasonableness of the Settlement Agreement will be held before this Court on _____ at ____ a.m./p.m.

SO ORDERED this ____ day of _____, 2013.

_____
Honorable Roy B. Dalton Jr.
United States District Judge

**EXHIBIT C**

Exhibit C

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE ENHANCED RECOVERY
COMPANY, LLC, TELEPHONE
CONSUMER PROTECTION ACT
LITIGATION

This document applies to all actions.               Case No. 6:13-MD-2398-Orl-37GJK

## [PROPOSED] FINAL APPROVAL ORDER

This matter comes before the Court on the joint request of Plaintiffs, the Class Members

and Defendant Enhanced Recovery Company ("ERC") for final approval of the Class Action

Settlement Agreement (the "Settlement Agreement"), and having considered the papers

submitted to the Court and proceedings to date, **THE COURT FINDS AS FOLLOWS:**

1.      This Court has jurisdiction over the subject matter of this Lawsuit, the Class

Representatives, the Class Members and Defendant;

2.      Solely for purposes of settlement, the following Settlement Class is certified

pursuant to Fed. R. Civ. P. 23(b)(2):

> All persons within the United States (b) who, on or after August
> 30, 2006 (c) received any telephone call from ERC or its agents to
> said person's cellular telephone made through the use of any
> automatic telephone dialing system or with an artificial or
> prerecorded voice, (d) which call was not made for emergency
> purposes, (e) where defendant's records do not show that the
> person provided the number to defendant or the original creditor
> (for example, where the number was obtained through skip tracing
> or captured by ERC's equipment from an inbound call)

Based on the parties' stipulations, and for settlement purposes only:

> (A)   The class as defined is sufficiently numerous such that joinder is
>
> impracticable;
>
> (B)   Common questions of law and fact predominate over any questions

affecting only individual Class Members, and include whether or not Defendant Enhanced Recovery Company violated the Fair Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"),

(C)     The claims of Plaintiffs Latasha Blake, Teresa Soppet, Loidy Tang, Wannett Drinning-Duffee, and Ronnie Duffee are typical of the Class Members' claims;

(D)     Plaintiffs Latasha Blake, Teresa Soppet, Loidy Tang, Wannett Drinning-Duffee, and Ronnie Duffee are appropriate and adequate representatives for the Class and their attorneys, James O. Latturner and the Law Offices of Edelman, Combs, Latturner and Goodwin, LLC, and David Schafer and the Law Offices of David Schafer, are qualified to serve as counsel for Plaintiffs and the Settlement Class;

(E)     ERC has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

3.     Notice was given to the Class pursuant to paragraph 2.8 of the Class Action Settlement Agreement;

4.     The dissemination of Notice, as provided for in the Preliminary Approval Order and the Settlement Agreement, constituted the best practicable notice under the circumstances to all Class Members and fully met the requirements of Fed. R. Civ. P. 23, any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law;

5.     _____ Members of the Settlement Class objected to the Settlement Agreement;

6.     The Settlement Agreement is fair, reasonable and adequate.

**THEREFORE, IT IS HEREBY ORDERED:**

A.     That all defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement;

B.     That the Settlement Agreement is finally approved and the Settling Parties shall implement it pursuant to its terms;

D.     That the Court hereby dismisses with prejudice this Lawsuit, all claims contained therein and all Released Claims;

E.     That, upon review of Class Counsel's fee petition, this Court awards to Class Counsel attorneys' fees and costs in the amount of $1,250,000, less the cost of notice, which this Court finds to be fair and reasonable;

F.     That this Court approves payment of $10,000 to each Plaintiff and Class Representative for their damages;

G.     That this Court reserves exclusive and continuing jurisdiction and venue with respect to the consummation, implementation, enforcement, construction, interpretation, performance and administration of the Settlement Agreement or Judgment;

H.     That, except as otherwise provided in the Settlement Agreement or herein, the Settling Parties are to bear their own attorneys' fees and costs;

I.     The parties are hereby ordered to comply with the terms of the Settlement Agreement. Specifically. ERC is ordered to comply with the following  injunctive relief:

      (A)     ERC shall strictly log and categorize consent.

      (B)     ERC shall strictly and routinely search and scrub every number provided to it by the original creditor to determine if it is a cellular telephone number and keep a log of said numbers.

      (C)     If ERC obtains any new telephone numbers for debtors from any source

(relatives, public resources, skip tracing, etc…), then those numbers must be scrubbed utilizing the latest technology to determine which phone numbers are cellular telephone numbers.

(D)     For each number identified as a cellular telephone number or for which ERC does or may know to be a cellular telephone number, said number cannot be called utilizing ERC'S auto-dialer.

(E)     For each cellular telephone number wherein ERC does not have concrete evidence of consent, ERC must hand-dial the number until ERC is able to obtain prior express consent.

(F)     Prior express consent must be clear and must be formally stated by the debtor in question.

(G)     ERC must confirm the consent in writing.

(H)     Prior express consent must be clearly and conspicuously noted in the computer system utilized by ERC debt collectors.

(I)     ERC must install or write sufficient software safeguards such that individual debt collectors may not circumvent these safeguards.

SO ORDERED this ____ day of _____, 2013.

                                    _____
                                    Honorable Roy B. Dalton Jr.
                                    United States District Judge